## OTT v SCHNEITER et

Ohio Appeals, 5th Dist, Tuscarawas Co

No 467. Decided Dec 28, 1936

OPINION

By LEMERT, PJ.

Appellants jointly and severally have appealed this cause on questions of law, and complain of the proceedings below upon the assignment of errors contained in the petition in error filed in this cause and which are as follow:

1. The damages allowed by the jury were excessive, and appear to have been given under influence of passion and prejudice.

2. The verdict of the jury is not sustained by sufficient evidence.

3. The verdict of the jury is contrary to law.

4. The court erred in the admission of evidence, and its charge to the jury, to all of which the appellants at the time excepted.

5. The court erred in overruling the demurrer to the third amended petition in the court below, to which the appellants at the time excepted.

6. The court erred in overruling the motion for a directed verdict at the close of the testimony of the appellee, plaintiff below, and again at the close of all the evidence in the case, to which the appellants, defendants below, at the time excepted.

7. The court erred in rendering judgment against the appellants, defendants below; said judgment should have been in favor of appellants, defendants below.

This cause was tried in Common Pleas Court of Tuscarawas County upon the issues contained in the fourth amended petition of the appellee and the separate answers of the appellants.

The fourth amended petition contains two causes of action, as set forth and alleged in the fourth amended petition by the appellee, Fred Ott, who commenced this action on behalf of numerous farmers engaged in the dairy industry, operated as a voluntary association, known as 'The Champion Cheese Company'. It is claimed in the fourth amended petition that the said Cheese Company, together with another association, known as 'The E. J. Miller Cheese Company,' sold, by parol contract, on or about the 8th day of January, 1934, to a firm known as 'Reynolds & Company', of New York City, a certain quantity of cheese, at an agreed price per pound, for future delivery and shipment.

Without a lengthy recitation of the facts disclosed by the record in this case, we have

Renner & Toomey, New Philadelphia, for appellee.

Bowers & Stafford, New Philadelphia, for appellants.

to say that the second cause of action in the fourth amended petition, contends that appellants agreed to and undertook to consummate the collection of the purchase price of a second shipment of cheese, and aver that they wholly failed to do so, causing the appellee to suffer a loss of $3,763.03. Separate answers were filed by the appellants, constituting in substance general denials. The appellant, Fred Schneiter, especially denies that he was special agent for said Cheese Companies, or any of them, for any consideration whatsoever, and prays that the fourth amended petition be dismissed. The separate answer of the Citizens Bank, one of the appellants herein, is in substance a general denial, but especially denies that it ever acted as special agent or agent of any kind for the appellee, and his associates, or either of them, in any capacity whatsoever, for any consideration whatsoever, and asks that the fourth amended petition be dismissed.

Upon the issues joined a verdict was returned by the jury in the full amount as prayed for, to-wit, the sum of $3795.93. Motion for a new trial was duly filed, alleging the same grounds of error as set forth in the assignment of errors hereinbefore set forth, and after the overruling of the motion for a new trial, notice of appeal was given to this court.

This cause has been well briefed and presented in oral argument. The first question presented has to do with the agency of the defendant below, Fred Schneiter. An examination of the record in the court below clearly shows that Fred Schneiter was an agent for plaintiff in the court below. He admitted this agency both on direct examination and on cross-examination, by testifying that he ordered the car for the plaintiff below, drew a bill of lading for said car, and procured a draft for the payment of the cheese; all of which acts were for the benefit of plaintiff. The testimony clearly shows that Fred Schneiter was instructed to send a sight draft for the purchase price of the cheese which is the subject of this action, and that he did send a sight draft attached to the bill of lading, and the record before us shows facts which would lead reasonable minds to conclude that the plaintiff below would not have sent the cheese to New York unless a sight draft was attached. The record further shows that The Champion Cheese Company had considerable difficulty in collecting the purchase price of a carload of cheese sent to the same purchasers in New York City about three weeks prior to the carload of cheese subject of this action. The testimony shows that a sight draft was released on the prior carload, and that a ten days acceptance draft was not paid when due. Payment for the prior carload of cheese was made by a certificate of deposit, payable to The Champion Cheese Company, and forwarded to the Citizens Bank of Sugarcreek on February 5, 1934, just a few days prior to the forwarding of the second carload of cheese. It is reasonable to believe that The Champion Cheese Company and The E. J. Miller Cheese Company wished to carry out their contracts to sell cheese, but after the difficulty with the prior shipment, it is reasonable to conclude that only a sight draft would be sent with the second carload. There is no testimony in the record showing that Fred Schneiter was instructed by the plaintiff below, or by any of the people he represented, to release the sight draft of February 8, 1934, and to extend credit to Reynolds & Company of New York City.

It is plain and clear from the record that the appellant, Fred Schneiter, being an agent for collection for plaintiff below, negligently caused plaintiff below to lose his security and he should be held to answer therefor; and that Fred Schneiter, having authority to send the cheese to New York and to procure a sight draft in payment therefor, had implied authority to choose a collection agent, to submit a bill of lading and sight draft and to receive payment therefor.

The testimony is undisputed that the appellant bank was so chosen and did act in such capacity. The bank prepared the drafts for the shipment of February 8, and the bank sent and received communications to and from its corresponding banks relative to the second shipment of cheese as well as the first.

The Citizens Bank of Sugarcreek, because of the duties undertaken by it and accepted by it to perform, became a sub-agent for The Champion Cheese Company and The E. J. Miller Cheese Company. In as much as Fred Schneiter was agent for the Cheese Company, the parties he chose to help him perform his duties became sub-agents of the Cheese Companies. As sub-agent, the appellant Bank became liable to the plaintiff below for the injury it caused him.

The law is clearly established that a sub-agent who negligently performs his duties,

thus injuring the rights of the principal is liable to the principal to the extent of the injury suffered by him.

2 Corpus Juris, 728, §391.

The testimony clearly shows that the appellant Bank had knowledge that the cheese shipped on February 8, 1934, belonged to The Champion Cheese Company, represented by plaintiff below. The telegrams and exhibits included in the record before us show clearly that the appellant Bank received communications that the cheese belonged to The Champion Cheese Company. The record clearly shows that the appellant Bank did not use the care required of it in exercising its authority. Knowing that the cheese belonged to The Champion Cheese Company and The E. J. Miller Cheese Company, represented by the plaintiff, the bank should have asked instructions from the plaintiff below before releasing the bill of lading and sight draft of February 8, 1934.

**White v Bank, 7 O. Dec. Rep. 666.**

**Bank v Bank, 49 Oh St 351.**

The appellant was charged with notice that Fred Schneiter, acting as a special agent to ship this carload of cheese to New York City, did not have implied authority to change a cash transaction into a credit transaction.

**1 O. Juris. 699.**

In the absence of special authority, mere authority to sell does not give the agent authority to sell on credit, nor does an agent for collection have authority to accept other than cash without express authority to the contrary. The authority to collect does not imply the power to do any act outside of the authority and necessary means for making the collection or receiving a payment or to do anything unusual which would modify the rights of the creditor or the liability of a debtor.

2 Corpus Juris, 626, §264.

So we are of the opinion that the defendant bank did not exercise that degree of care which the law requires it to exercise.

We have carefully examined the charge of the court as to the liability of Fred Schneiter and of the Citizens Bank, and we find that said charge does not contain any error.

It is claimed by appellants that the court erred in its charge by defining to the jury the meaning of ordinary negligence as well as gross negligence. From the record before us, it discloses that it was necessary for the court to charge on ordinary negligence in order to help the jury understand the meaning of 'gross negligence.' How could a jury of laymen determine what the law requires of gross negligence without first knowing the meaning of negligence, and at what point of wrongful conduct the term 'gross negligence' starts and where 'ordinary negligence' ends. The court correctly charged as to the meaning of 'gross negligence,' as disclosed by the record on page 163, wherein he stated:

"If you find that the defendants or either of them acted as agents as aforesaid on this occasion without compensation or gratuitously, then, before they, or either of them, would be liable for negligence it must further be shown that they were grossly negligent, as heretofore defined, before they would be liable for loss and damage by reason thereof."

There is a further reason for the court charging on ordinary negligence as well as gross negligence, because there was testimony in the record raising a doubt as to whether the appellants were gratuitous or compensated agents.

On the matter of the issue of insolvency, there is no error in this case prejudicial to the rights of the defendants below. If there was any error in the court's charge along this line, it was error against the plaintiff below and not against the appellants herein and they are in no position to complain in this regard.

On the matter of the charge of the court as to the measure of damages, the cause of action in this case was a tort action, a redress for a wrong done. In such cases the measure of damage is the loss suffered by the plaintiff below.

"An agent to collect a debt or claim must exercise ordinary care, skill and diligence in the performance of all the duties incident to the undertaking and will be liable to his principle for any loss which his negligence in this respect may occasion."

2 Corpus Juris, 726, §388.

"The measure of damages is the loss or injury actually sustained by the principal as the result of such negligence."

2 Corpus Juris, 734, §400.

We are of the opinion that the loss of the plaintiff below in this case was the amount prayed for in the petition, the purchase price of the carload of cheese. The wrongful release by the appellants of the sight draft and bill of lading of February 8, 1934, caused the plaintiff below to lose the purchase price.

3 Sutherland on Damages, 2922, §§771 and 774.

From an examination of all the record in this case we are of the opinion that the verdict and judgment rendered below in favor of the appellee was correct and proper, and we have carefully examined into all the errors complained of in this case, and we find no errors herein. It therefore follows that the finding and judgment of the court below will be and the same is affirmed. Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.