THE FALLS LUMBER CO., APPELLEE, *v.* HEMAN ET AL., APPELLEES; NORTH AKRON SAVINGS ASSN., APPELLANT.*

(No. 5086—Decided May 3, 1961.)

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for appellee The Falls Lumber Company.

*Mr. Lee Ferbstein,* for appellees Stanley A. Heman and Doris L. Heman.

*Mr. Albert F. Schwartz, Mr. Harry W. Schwab, Jr.,* and *Mr. N. C. Syracopoulos,* for various lien claimants.

*Mr. John McIntosh,* for appellant.

HUNSICKER, J. On April 2, 1956, Stanley A. Heman and Doris L. Heman, his wife, entered into a contract with The M. W. DeWitt Construction Company for the construction of a house to be erected on Lot 64, Kenilworth Manor Allotment, also known as 1326 DeWitt Drive, Akron, Ohio. The total cost of the house and lot was to be $17,500.

To facilitate the construction, it was necessary for Mr. and Mrs. Heman to secure a loan of sufficient money to finance the

_____

*Motion to certify the record overruled, December 13, 1961.

building of the house. To that end they made application to North Akron Savings Association, herein called "Bank," for a loan of enough money to build a house similar to a model home already erected in the Kenilworth Manor Allotment.

The Bank, through its proper officers, inspected this model home, and agreed to advance $11,000 on a first mortgage secured by the land and the building to be thereafter erected. In the course of negotiations, the construction company insisted that Mr. and Mrs. Heman must secure an additional sum of money in the amount of $5,500 to insure payment for the house. The Bank required Mr. and Mrs. Heman to deposit this money in escrow with it, along with the funds provided by the mortgage. This money was to be paid out by the Bank to the construction company as the work progressed.

The mortgage was what is commonly known as a construction mortgage. Mrs. Heman testified that an officer of the Bank said they "would take care of things for us [Mr. and Mrs. Heman]."

The agency agreement between Mr. and Mrs. Heman and the Bank was entirely oral. The Bank paid out money to the construction company without requiring any compliance with the terms of the statute concerning construction mortgages, and without requiring such construction company to submit releases under the mechanic's lien law of Ohio.

After the home was complete, and all the money in the hands of the Bank had been paid to the M. W. DeWitt Construction Company, mechanics' liens in an amount exceeding $5,500 were filed as liens against the Heman property.

One of the lien claimants, The Falls Lumber Company, thereafter began an action to marshal liens and sell the Heman house. All lien claimants were made parties to such action.

Mr. and Mrs. Heman filed a cross-petition in the action against North Akron Savings Association, asking that the Bank "be required by a proper decree * * * to account and pay over to these defendants [Mr. and Mrs. Heman] such sums, together with interest and costs, and together with attorney fees necessary to defendant (sic) these defendants and prosecute the within claim, as may be due to them by reason of the matters and things and results thereof complained of herein."

The gravamen of the complaint, as contained in the first

cause of action (the only cause considered by the trial court), was the negligent conduct of the Bank when, in disbursing the funds entrusted to the Bank, it did not require a compliance with the mechanic's lien law of Ohio.

The trial court found that: there was sufficient credible evidence to sustain the contention of counsel for Mr. and Mrs. Heman that the mortgage herein was a construction mortgage loan; there was an oral agency contract whereby the Bank was to do all things necessary in paying out the funds to the construction company; and, the Bank was guilty of negligence in paying out the money to the construction company without first securing a release of all claims of materialmen and subcontractors, which negligence proximately caused a loss to Mr. and Mrs. Heman in the amount of the unpaid liens set out in this action.

From the judgment entered in favor of Mr. and Mrs. Heman, the Bank appeals to this court on questions of law, saying the trial court erred in rendering a judgment in favor of Mr. and Mrs. Heman under the facts of this case.

No appeal has been taken by any party as to the determination by the trial court that the mechanics' liens asserted herein are valid and subsisting liens in the amounts set out in the claims so filed.

As heretofore stated, there is ample credible evidence to conclude, as the trial court did, that North Akron Savings Association undertook, as agent for Mr. and Mrs. Heman, to disburse all the funds required to construct the home which the M. W. DeWitt Construction Company was to build for Mr. and Mrs. Heman. The evidence was also sufficient to sustain the conclusion of the trial court that the advance of funds by the Bank was a construction mortgage loan, and that such Bank assured Mr. and Mrs. Heman that they would take care of all matters respecting the proper disbursement of the funds, so as to protect Mr. and Mrs. Heman from any claims which would cause them to pay more for their home than the amount agreed upon by the parties.

The North Akron Savings Association is an institution established, among other things, for the purpose of making loans on improved real estate and, as such, holds itself out to the community as skilled in conducting all phases of such transactions. This Bank surely knew the necessary procedure to pre-

clude the establishment of mechanics' liens upon the house being constructed herein. Section 1311.04, Revised Code, sets out in detail how money is to be paid out in cases such as we have herein, in order to prevent the obtaining of mechanics' liens by those supplying material or doing work on a construction project such as we have in this matter before us.

The general rule, with reference to the duty of an agent acting for his principal, is stated in 2 Restatement of the Law of Agency (2d), Chapter 13, Section 383, that:

"Except when he is privileged to protect his own or another's interests, an agent is subject to a duty to the principal not to act in the principal's affairs except in accordance with the principal's manifestation of consent."

When the Bank indicated to Mr. and Mrs. Heman that they would take care of everything, there was inherent in that statement the promise that the agent would act only in such a way as to protect the parties from harm.

It must be noted herein that the Bank was not performing its services gratuitously. It had been paid for the construction loan the standard fee. It also, by making the loan, was securing a benefit to itself, and in addition it could use the money deposited by Mr. and Mrs. Heman until called upon to pay it to the construction company.

"The relation between principal and agent is always consensual but not always contractual. * * * A failure to perform a gratuitous promise when there has been loss because of reliance by the principal may cause the agent to be liable only in an action of tort. * * * if a paid agent does something wrongful, either knowing it to be wrong, or acting negligently, the principal may have either an action of tort or an action of contract. * * *." 2 Restatement of the Law of Agency (2d), Chapter 13, Section 401 (a).

1 Mechem on Agency (Second Ed.), Section 1233, at page 904, says:

"In practically every case wherein the principal has proximately suffered loss, the principal may sustain an action of tort against the agent based upon the latter's breach of duty."

It certainly is reasonable to conclude that one who undertakes to act for another in the disbursing of funds is answerable for failure to do so with due care. An agent owes to his

principal the use of such skill as may be required to accomplish the object of his employment.

Thus, in *Bank* v. *Bank,* 49 Ohio St., 351, the court determined that if, by reason of the neglect of an agent to take proper action in the matters for which he was employed, a principal suffers loss, the agent becomes liable to his principal for the resulting damages.

In *Ott* v. *Schneiter,* 56 Ohio App., 359, at page 363, the court said:

"The law is clearly established that a subagent who negligently performs his duties, thus injuring the rights of the principal, is liable to the principal to the extent of the injury suffered by him."

See also: *Archer* v. *Huntington National Bank,* 92 Ohio App., 229; and 2 Ohio Jurisprudence (2d), Agency, Section 115, and cases there cited.

The duty of the Bank, in the instant case, with reference to the money belonging to Mr. and Mrs. Heman, was much like that of a trustee engaged to hold and disburse funds of the trust estate. Just as a trustee who has failed to properly administer a trust, thereby causing a loss to the trust, may be charged with such loss, so should an agent be held liable to his principal for a loss due to the neglect of the agent to properly conduct the business undertaken for his principal. 40 Ohio Jurisprudence, Trusts, Section 177, at page 442, and authorities there cited.

We therefore conclude that, when the Bank undertook to disburse money for Mr. and Mrs. Heman for the construction of the home being built for them by the M. W. DeWitt Construction Company, it was required to use reasonable care to see that mechanics and materialmen were paid by the contractor, and to that end it was obliged to use ordinary care to protect Mr. and Mrs. Heman from having mechanics' liens placed against their home. The failure to exercise ordinary care in the discharge of its duty subjected the Bank to an action of tort for the loss so sustained.

The judgment in this action is not against the manifest weight of the evidence or contrary to law, and must be affirmed.

*Judgment affirmed.*

STEVENS, P. J., and DOYLE, J., concur.