Estill **SPURLOCK** and Velma Spurlock,
**Appellants-Cross-Claimants,**

v.

**FAYETTE FEDERAL SAVINGS & LOAN ASSOCIATION,**
**Appellee-Cross-Defendant,**

**Zeigler Building Materials, Inc.,**
**Appellee-Plaintiff,**

**Roman Nobbe, Appellee-Defendant.**

No. 4–581A7.

Court of Appeals of Indiana,
First District.

June 15, 1982.
Rehearing Denied July 28, 1982.

---

Lowell C. McMillin, Ronald K. Rychener, Mullin, McMillin & Rychener, Brookville, for appellants-cross-claimants.

Don Hubert Wickens, Christopher E. Baker, Greensburg, Albert P. Heeb, Connersville, for appellee-cross-defendant.

NEAL, Judge.

## STATEMENT OF THE CASE

Appellants-cross-claimants Estill Spurlock and Velma Spurlock (Spurlocks) appeal from a negative judgment entered in the Decatur Circuit Court without the intervention of a jury on their cross-claim against appellee-cross-defendants Fayette Federal Savings & Loan Association (Fayette Federal) for breach of a duty to use reasonable care in the disbursal of construction loan proceeds.

We affirm.

## STATEMENT OF THE FACTS

On April 3, 1978, Zeigler Building Materials, Inc. (Zeigler) filed a lawsuit against the Spurlocks, Fayette Federal and one Roman Nobbe[1] to foreclose a mechanic's lien for $17,064.98 worth of materials furnished to Spurlocks as instructed by Kipley Miller (Miller), the contractor hired to build Spurlocks' house. Thereafter, the Spurlocks filed a cross-claim against Fayette Federal alleging that it was responsible for Zeigler's having filed a mechanic's lien against their property, and therefore, it should pay off the lien. On Zeigler's complaint, the trial court entered judgment in favor of Zeigler, the lienholder, and it ordered the foreclosure of Spurlocks' property to pay off Zeigler's mechanic's lien and Fayette Federal's mortgage.

A separate trial was held on Spurlocks' cross-claim, being the subject of this appeal, and the trial court found in favor of Fayette Federal, entering the following findings of fact:

"1. The Fayette Federal Savings & Loan Association was duly chartered by the United States as a Savings & Loan Association with its principal office in Connersville and a branch office in Brookville.

---

1. Nobbe did not participate in this cause and is not a party to this appeal.

2. On July 5, 1977, Estill Spurlock and Velma Spurlock filed a residential loan application with Fayette Federal. Approximately one (1) week later, Fayette Federal approved their loan application.

3. On July 17, 1977, Estill Spurlock and Velma Spurlock entered into an agreement with Kipley Miller for the construction of a home on their real estate in Franklin County, Indiana. The contract, Defendants', Spurlocks, Exhibit '8', provided that the Spurlocks would pay the contractor in three (3) payments. This contract was prepared and signed by Kipley Miller and the Spurlocks without the assistance or intervention of Fayette Federal. Spurlocks chose Kipley Miller because he was the lowest bidder of three bids taken upon Spurlocks initiative.

4. On August 25, 1977, Zeigler Building Materials, Inc. sent Estill Spurlock written notice of the existence of Zeigler's mechanic's lien rights against the Spurlock real estate. These are plaintiff's Zeigler, Exhibit '56'. The letters were sent by registered mail.

5. Estill Spurlock received Zeigler's notice. He read the notice and gave it to Velma Spurlock who also read it.

6. Neither Estill Spurlock nor Velma Spurlock informed Fayette Federal of their receipt of Zeigler's notice marked Plaintiff's Exhibit '56'. They did not give the correspondence or notice to Fayette Federal. The Spurlocks did not contact Zeiglers.

7. On September 20, 1977, Estill Spurlock and Velma Spurlock executed the first mortgage note, Defendant's, Fayette Federal, Exhibit '14', the real estate mortgage, Exhibit '13', and the affidavit, Exhibit '29'. The affidavit stated:

'That there are no liens or claims that may become liens, upon the real estate in said mortgage described prior to said mortgage except as shown in the abstract of title;'

The Spurlocks did not inform Fayette Federal of the receipt of the notice from Zeigler, Plaintiff's Exhibit '56', when they signed this affidavit.

8. Kipley Miller asked the Spurlocks for a payment. Estill Spurlock took his bill to Fayette Federal and requested a disbursement of an installment of $12,000.00.

9. On September 20, 1977, Fayette Federal issued their check, Defendant's, Fayette Federal, Exhibit '2', No. 210475, for $12,000.00 to Estill Spurlock and Velma Spurlock and Kipley Miller, contractor. Fayette Federal gave this check to Estill Spurlock. Estill Spurlock delivered it to Kipley Miller after the Spurlocks endorsed it.

10. Kipley Miller asked the Spurlocks for a second payment. Estill Spurlock took his bill to Fayette Federal and requested a disbursement of an installment of $14,900.00.

11. On October 3, 1977, Fayette Federal issued its Check No. 215644, Defendant's, Fayette Federal, Exhibit '3', to Estill Spurlock and Velma Spurlock and Kipley Miller, for $14,900.00. Fayette Federal gave this check to Estill Spurlock who took it to Velma Spurlock for her endorsement and then delivered it to Kipley Miller.

12. Fayette Federal had no contact or communications with Kipley Miller concerning the construction of the Spurlock home, the above described payments or any other matter relating to the Spurlocks.

13. Kipley Miller quit work on the Spurlock home in November 1977.

14. On November 27, 1977, Zeigler contacted Velma Spurlock by telephone concerning the amount due on Kipley Miller's account for their home. This was the first contact between Zeigler's and the Spurlocks since Zeigler's letter of August 25, 1977.

15. Shortly thereafter, Zeigler's contacted Fayette Federal. This was the first time that Zeigler's had talked with Fayette Federal concerning their alleged mechanic's lien rights on this property.

16. On November 28, 1977, Zeigler's filed their mechanic's lien.

17. There was no express agreement between the Spurlocks and Fayette Federal by which Fayette Federal undertook to protect the Spurlock property from mechanic's liens or other liens.

18. There was no evidence of a custom or practice in Franklin County or surrounding areas which required a mortgagee to protect a mortgagor from mechanic's liens and other incumbrances on this type loan.

19. Fayette Federal did not make any representations concerning the reliability and credit of Kipley Miller or other building contractors to Spurlocks. No written evidence of any recommendations or representations concerning the character, conduct, credit ability, trade or dealings of Kipley Miller were introduced into evidence.

20. Fayette Federal made all disbursements of the loan proceeds only when requested by the Spurlocks. All disbursement checks were then given to the Spurlocks.

21. There was no evidence that the Spurlocks told Fayette Federal that they were relying on Fayette Federal to protect them from mechanic's liens or other liens.

22. There was no evidence that Fayette Federal held itself out to the community as skilled in the practice of making construction loans.

23. Fayette Federal did not make any special charge for making the loan to the Spurlocks. It did charge its usual point charge which it charges to all borrowers."

From these findings, the trial court concluded, *inter alia*, that: 1) Fayette Federal only made disbursements of loan proceeds into the hands of the Spurlocks upon their request; 2) the Spurlocks then delivered the disbursements to Miller, the contractor; 3) Fayette Federal at no time did business with or communicated to Miller concerning the Spurlocks' loan or house; 4) Fayette Federal never made an express agreement with the Spurlocks to protect them from mechanic's liens or other encumbrances against their property; 5) Fayette Federal had no duty to first obtain releases from materialmen before disbursing loan proceeds to the Spurlocks; and 6) there was no custom and practice in Franklin County, Indiana, requiring mortgagee-lenders to protect their borrowers by securing releases from materialmen prior to disbursing loan proceeds to mortgagor-borrowers.

## ISSUES

Spurlocks present the following issues for review:

I. Does a mortgagee-lender who, as a condition of granting a construction loan, insists on retaining and controlling the construction loan proceeds for disbursal by the mortgagee-lender in order to protect the priority of its mortgage lien, in so doing take upon itself a fiduciary duty to exercise reasonable care in disbursing the loan proceeds to protect the mortgagor from having mechanic's liens filed against the mortgagor's property?

II. Does a mortgagee-lender in a construction loan situation who has at the time of closing the construction loan insisted upon retaining the loan proceeds to itself disburse, discharge its fiduciary duty to its mortgagor-borrower when, at the time of loan disbursals, it takes no affirmative actions to protect the mortgagor-borrower's property from the filing of mechanic's liens?

III. Are Spurlocks entitled to a judgment against Fayette Federal for all damages suffered due to Fayette's breach of a fiduciary duty?

## DISCUSSION AND DECISION

As Fayette Federal carefully reminds us in its brief, Spurlocks' appeal is from a negative judgment on their cross-claim. In its findings of fact and conclusions of law, the trial court found "Fayette Federal did not have any duty to disburse the loan proceeds to the Spurlocks and their contractor until affidavits or releases from materialmen and laborers were obtained." We

agree with Fayette Federal that the issue is whether there is any evidence to support the trial court's finding that no such duty existed.

 Where the trial court has made findings of fact and conclusions of law, the Court of Appeals considers only that evidence and reasonable inferences therefrom which supports the judgment, and this court will set aside findings of fact and conclusions of law of the trial court only where clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A); *Criss v. Bitzegaio*, (1981) Ind., 420 N.E.2d 1221; *Sigsbee v. Swathwood*, (1981) Ind.App., 419 N.E.2d 789. Appellants cannot attack a negative decision on the ground that there was a lack of evidence to sustain the judgment. *Steup v. Indiana Housing Finance Authority*, (1980) Ind., 402 N.E.2d 1215. A party appealing a negative judgment must establish that the evidence is without conflict and leads to but one conclusion and that the trial court did not reach that conclusion. *Citizens National Bank of Whitley County v. Stasell*, (1980) Ind.App., 408 N.E.2d 587. In appealing from a negative judgment on his counterclaim, defendant could only attack the trial court's decision as contrary to law. *Grueninger Travel, Etc. v. Lake County Trust Company*, (1980) Ind.App., 413 N.E.2d 1034; *Churchwell v. Coller and Stoner Building Co.*, (1979) Ind.App., 385 N.E.2d 492. Finally, in determining whether a negative finding is contrary to law, the Court of Appeals weighs neither evidence nor the credibility of witnesses, and the judgment will be reversed only if the evidence is without conflict and leads but to one conclusion, which is opposite of that reached by the trial court.

 Having set forth our standard of reviewing a negative judgment, the only issue to discuss is whether the trial court erred as a matter of law in finding that Fayette Federal owed no duty to the Spurlocks to obtain releases from materialmen in advance of disbursing loan proceeds to the Spurlocks.

The Spurlocks cite and entirely rely on the ruling in *Prudential Insurance Company of America v. Executive Estates, Inc.*, (1977) Ind.App., 369 N.E.2d 1117, as the controlling case.

We first would note, as Fayette Federal reminds us, that *Prudential* was an appeal by a mortgagee-lender from a jury verdict in favor of the mortgagor-borrower, and therefore, the decision was reviewed by the Court of Appeals in a light most favorable to the jury's verdict. In reviewing the decision of the trial court, the Court of Appeals in *Prudential, supra*, at 1124, considered the evidence most favorable to the appellee-mortgagor and concluded "the jury could reasonably have found Prudential owed a duty to Executive [borrower] arising out of an express agreement to secure a complete release...."

In *Prudential*, the borrowers, before closing, requested Prudential to protect their interests at the closing; furthermore, Prudential promised the borrowers that no liens or encumbrances would attach to their real estate for Prudential would take care of it. Thus, Prudential as mortgagee-lender had expressly agreed to protect borrowers' interests at the closing. Specifically, Prudential agreed to obtain releases of filed mechanic's liens before disbursing loan proceeds directly to a third party contractor. Also, Prudential maintained a loan policy which prevented the borrowers from personally controlling disbursements of the loan proceeds. At the closing, Prudential failed to obtain a release from a third party who already had filed and recorded a lien against the borrowers' property.

The Court of Appeals found that a lender's duty to protect borrowers from existing and potential liens did arise in *Prudential* because of an express agreement to that effect. In addition, the evidence in *Prudential, supra*, at 1126, showed that other Indianapolis mortgagees obtained lien protection for mortgagors at closings, and that Marion County lenders "protected their borrowers' interests by securing releases of any existing liens and waivers of liens not filed by the time of the closing." (Footnote omitted.)

Lastly, the Court of Appeals imposed a duty upon Prudential because of its relationship to the borrowers. The facts established that Prudential agreed to act as agent to the borrowers and protect the interests of its principal.

"A mortgagee-lender who insists on controlling disbursement of the loan proceeds in order to protect its own interests (mortgage lien), deprives the mortgagor of possession of the loan proceeds for which he has bargained, and in doing so must equitably be considered as the mortgagor's agent saddled with a duty to use reasonable care to protect the principal's interests. 55 Am.Jur.2d *Mortgages* § 14 at 203 (1971); *Falls Lumber Co. v. Herman, supra* [114 Ohio App. 262, 181 N.E.2d 713]. *See also Bulla v. Donahue* (1977), Ind.App., 366 N.E.2d 233; *Montgomery Ward & Co., Inc. v. Tackett* (1975) [163 Ind.App. 211] 323 N.E.2d 242."

*Prudential, supra,* at 1128.

Unlike *Prudential,* in the case at bar, the Spurlocks, without the knowledge or aid of Fayette Federal and before obtaining a construction loan, made a contract with Miller to build their residence. Prior to closing the loan, the Spurlocks received written notice from Zeigler on August 25, 1977, informing them of Zeigler's right to hold a mechanic's lien against their property for materials he furnished to Miller. The Spurlocks read the notice but did not tell Fayette Federal or Miller about it. There was no express agreement made between the Spurlocks and Fayette Federal to protect the borrowers' interests from liens or encumbrances. Fayette Federal never promised the Spurlocks it would act as their agent to obtain lien right waivers from materialmen. As Fayette Federal points out in its brief and as the trial court correctly found, there was no evidence that the custom and practice of lending institutions in Franklin County, Indiana, generally or Fayette Federal specifically created a duty in the lender to protect borrowers from all present and future liens and encumbrances.

And perhaps most importantly, unlike in *Prudential* where the lender not only controlled the funds but also made direct disbursements of loan proceeds to third parties, Fayette Federal never disbursed loan proceeds to anyone other than the Spurlocks, and only upon their express request. Furthermore, Fayette Federal and the Spurlocks agreed to having the loan funds disbursed in three or four draws in accordance with the borrowers' needs. Fayette Federal disbursed funds only as directed by the Spurlocks.

The Spurlocks seem to argue that the ruling in *Prudential* imposes a legal duty upon Fayette Federal to take affirmative steps to secure releases and waivers of existing and potential liens before it disburses any loan proceeds, and therefore, the trial court's having found otherwise is contrary to law.

From our discussion of the foregoing factual differences between *Prudential* and the instant case, we cannot agree with the Spurlocks, *Prudential* being distinguishable on its facts from the case at bar. Guided by our standard of review, we hold that there was evidence to support the trial court's finding that Fayette Federal did not have a duty to obtain releases from materialmen before disbursing loan proceeds to the Spurlocks.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.