697 P.2d 1225

**Barry LAIGHT and Renate Laight, husband and wife, Defendants-Cross Plaintiffs-Appellants,**

v.

**IDAHO FIRST NATIONAL BANK, Defendant-Cross Defendant-Respondent.**

**No. 15128.**

Court of Appeals of Idaho.

March 27, 1985.

Marc J. Weinpel, Idaho Falls, for defendants-cross plaintiffs-appellants.

James D. Holman, Idaho Falls, for defendant-cross defendant-respondent.

SWANSTROM, Judge.

A subcontractor sued Barry and Renate Laight to foreclose the lien he had filed against their new home when the builder failed to pay for the work. The Laights brought this cross-claim against Idaho First National Bank (hereinafter IFNB) to recover for breach of a contractual duty to secure lien waivers from various subcontractors prior to disbursing loan proceeds.

IFNB denied that it had such a duty under the construction loan agreement entered into by the parties. The district court granted summary judgment to IFNB. The Laights appeal, raising five issues: (1) Was the construction loan agreement ambiguous? (2) Were the clauses in the agreement concerning lien waivers repugnant to each other? (3) Was the agreement subsequently modified by the conduct of IFNB? (4) Did IFNB breach its duty of due care by failing to secure the lien waivers? and (5) Are the Laights entitled to attorney fees on appeal? We affirm.

Wishing to build a home in Idaho Falls, the Laights approached IFNB in the spring of 1981 for a loan to finance their venture. On April 24, the Laights and IFNB signed a construction loan agreement. Under the terms of this agreement, the loan proceeds and cash supplied by the Laights were deposited in a special account. They were disbursed in the form of cashier's checks made payable jointly to the Laights and the builder, with the Laights' funds disbursed first. The agreement required that disbursement "occur immediately upon receipt by the BANK of a written 'Report of Expenditure' from either the OWNER or the BUILDER." The Report of Expenditure was to include, among other things, receipts of payment and lien waivers from the subcontractors, laborers and materialmen.

In June construction began. IFNB made periodic disbursements, however, without first obtaining receipts of payment and lien waivers. When construction was completed in November, one of the subcontractors had not been paid. In January 1982 that subcontractor filed his claim of lien and in June filed a foreclosure complaint, naming the Laights, IFNB and others as defendants. The Laights answered the complaint and later filed a cross-claim against IFNB alleging negligence, breach of contract and breach of fiduciary duty. The gist of their claim was that IFNB should have secured lien waivers prior to making disbursements and, failing that, should be liable for any liens filed against the property. IFNB

moved for summary judgment on the cross-claim. The motion was granted and this appeal followed.

■ The first issue on appeal is whether the construction loan agreement was ambiguous. The district court held that it was not and that IFNB had no duty under the agreement to secure lien waivers before making disbursements. The Laights contend on appeal that the agreement was ambiguous as to IFNB's duties and thus summary judgment was inappropriate. Whether a contract is ambiguous is a question of law. *See Clark v. St. Paul Property and Liability Ins. Companies,* 102 Idaho 756, 639 P.2d 454 (1981). Thus, we are not *bound* by the holding of the district court that the agreement was ambiguous. Nevertheless, we agree with that holding.

■ A contract is ambiguous if it is "reasonably subject to conflicting interpretation." *Rutter v. McLaughlin,* 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). We must construe the contract as a whole and consider it in its entirety to determine whether it is reasonably subject to conflicting interpretations. *Beal v. Mars Larsen Ranch Corporation, Inc.,* 99 Idaho 662, 586 P.2d 1378 (1978). The agreement provides in pertinent part:

4. *Lien Waivers.* In addition to the descriptions and certifications required to be contained in the Report of Expenditure as described in paragraph 3 above, the Report of Expenditure shall also contain receipts of payment and lien waivers from subcontractors, laborers and materialmen. It shall be the BUILDER's responsibility to insure the prompt payment of sub-contractors, laborers and materialmen in installments which correspond to the construction work completed as certified in the Report of Expenditure, and to simultaneously therewith, secure on behalf of the OWNER/BORROWER, all necessary lien waivers, so that no mechanic's or materialmen's liens are filed against the construction premises. THE BANK DOES NOT WARRANT TO THE OWNER/BORROWER THAT THE DWELL-ING AND PREMISES ARE NOW FREE FROM LIENS OR CLAIM OR RIGHT OF LIEN GRANTED UNDER ANY APPLICABLE LAW OR WILL BE FREE OF SUCH LIENS WHEN CONSTRUCTION IS COMPLETED. IN THIS REGARD, IT SHALL BE THE OWNER/BORROWER's SOLE RESPONSIBILITY TO ASCERTAIN TO HIS SATISFACTION, THE PROGRESS OF THE CONSTRUCTION PROJECT AND THE STATUS OF CORRESPONDING SUBCONTRACTOR PAYMENTS PRIOR TO ENDORSEMENT OF ANY DISBURSEMENT CHECKS. [Capitalization original.]

■ The Laights insist that IFNB had an implied duty to insure that lien waivers from the subcontractors were actually obtained because each "Report of Expenditure" was to include lien waivers. The agreement, however, explicitly relieves IFNB of any responsibility at all in regard to the lien waivers. It clearly places the responsibility for ascertaining the status of payments to the subcontractors upon the Laights. In the face of this explicit language, emphasized in the agreement itself, we cannot imply a duty upon IFNB as the Laights request. We hold that, read as a whole, the agreement was not ambiguous. We will not render it ambiguous by implying a duty which is contrary to the explicit language of the agreement.

This discussion also serves to answer the Laights' second issue—that the clause requiring a "Report of Expenditure" contain lien waivers and the clause relieving IFNB of liability for any liens are repugnant to each other. The plain language of the agreement simply does not support this assertion. Only by *implying* a duty in the first clause contrary to the clear language of the second clause would the two clauses be repugnant to each other. By so implying a duty we would be creating an ambiguity where none existed before.

■ The Laights further argue that, in construing the agreement, we should consider statements made by the loan officer

in her deposition. These statements allegedly shed a different light upon the intent of the parties than what is revealed by the language of the agreement. "The primary objective of construction of a contract is to discover the intention of the parties...." *Beal v. Mars Larsen Ranch Corporation, Inc.,* 99 Idaho at 668, 586 P.2d at 1384. Normally, however, "the intent of the parties must be derived from the language of the instrument itself if that instrument is unambiguous." *Bailey v. Ewing,* 105 Idaho 636, 640, 671 P.2d 1099, 1103 (Ct.App. 1983). Since we have held that the agreement was unambiguous, the intent of the parties must be determined solely from the language of the agreement. The meaning and legal effect of an unambiguous agreement is a question of law. Plainly, the agreement demonstrates an intent that the Laights would bear the burden of the failure to obtain lien waivers.

■ The third issue raised by the Laights concerns a possible modification of the agreement by conduct. We note that summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." I.R.C.P. 56(c). Neither the pleadings nor the affidavits on file, however, raise the issue of modification. This, apparently, is an issue first raised on appeal and can thus have no effect on the validity of the summary judgment. We decline to discuss the merits of this issue.

■ The fourth issue is whether IFNB breached its duty of due care by failing to secure lien waivers before disbursing the loan proceeds. A mortgagee is not generally obligated to protect the interests of the mortgagor unless the agreement requires him to do so. 59 C.J.S. MORTGAGES § 298 (1949). The mortgagee *may* be obligated *in the absence of an agreement* if it exercises complete control over disbursement of the funds or if the mortgagee is the agent of the mortgagor. *See Prudential Insurance Company of America v. Executive Estates, Inc.,* 174 Ind.App. 674,

369 N.E.2d 1117 (1977); *Falls Lumber Co. v. Heman,* 114 Ohio App. 262, 181 N.E.2d 713 (1961).

■ The Laights urge us to follow *Prudential,* a case that we believe is inapposite. The parties in that case had no construction loan agreement similar to the one here. Moreover, in *Prudential,* the mortgagee represented to the mortgagor that "there would be no liens or encumbrances on that real estate because Prudential [mortgagee] would take care of it." 369 N.E.2d at 1124. No such representation was made in the present case; indeed, the agreement stated that IFNB did *not* warrant "that the dwelling and premises ... will be free of such liens when construction is completed." There was, therefore, no express agreement requiring IFNB to protect the Laights' interest by securing lien waivers from the subcontractors.

In addition, "[t]he mere relationship of mortgagor-mortgagee may require the mortgagee to protect the mortgagor's interest at a closing in which the mortgagee controls disposition of the loan proceeds." *Prudential Insurance Company of America v. Executive Estates, Inc.,* 369 N.E.2d at 1126. In *Prudential,* the mortgagor, whether intentionally or otherwise, was excluded from the closing despite a request for inclusion. Furthermore, *all* the loan proceeds were disbursed at the closing. Thus only the mortgagee was in a position to protect the mortgagor's interest. The court held: "The evidence indicates that Prudential denied Executive ... the right to personally control the disbursement of the mortgage proceeds." *Id.* 369 N.E.2d at 1124. A duty of due care was therefore imposed upon the mortgagee.

Here, however, the Laights *did* control disbursement to a significant degree. The funds were periodically disbursed to the Laights (mortgagors), only at their request, in the form of checks payable jointly to them and to the builder. The agreement made it clear that the Laights had the duty to ascertain the status of the payments to the subcontractors *before* they endorsed the checks representing the loan proceeds.

If the subcontractors were not being paid, the Laights could have simply refused to endorse the checks until they were. The Laights thus had sufficient control to protect their interest against the possibility that the subcontractors were not being paid. This degree of control, coupled with the language in the agreement explicitly relieving IFNB of any duty with regard to liens against the property, precludes a finding that IFNB owed a duty of due care to the Laights.

We have considered the Laights other arguments and we are not persuaded they have merit. It follows that the Laights' request for attorney fees—their fifth issue—must also fail.

IFNB has also requested an award of attorney fees on appeal. Such an award will be made under I.C. § 12–121 if we are left with the abiding belief that the appeal was brought or pursued unreasonably, frivolously or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). We believe this appeal falls within the *Minich* standard. The agreement relied on by the bank is clear and unambiguous. We have not been confronted with a choice between reasonable inferences. The law governing the case is well settled. Finally, there has been no cogent argument that the district court, in granting summary judgment, misapplied the law to the uncontroverted facts. Therefore, we award attorney fees on appeal to the bank in an amount to be determined as provided in I.A.R. 41(d).

The summary judgment is affirmed. Costs and attorney fees on appeal to respondent, IFNB.

WALTERS, C.J., and BURNETT, J., concur.