822 P.2d 995

**Tanya K. WOODEN, a single woman, Appellant,**

v.

**The FIRST SECURITY BANK OF IDAHO, N.A., Respondent.**

**No. 18620.**

Supreme Court of Idaho,
Boise, October 1991 Term.

Dec. 26, 1991.

---

Jenkins & Leggett, Coeur d'Alene, Idaho, for appellant. Ida R. Leggett argued.

Clements, Brown & McNichols, Lewiston, Idaho, for respondent. Robert P. Brown argued.

BAKES, Chief Justice.

This appeal arises from a foreclosure action to recover labor and material liens filed against Tanya Wooden's newly constructed residence. Wooden filed a cross-claim against the several lien claimants, and a counterclaim against First Security Bank, her construction lender. Wooden's claim against First Security Bank alleged that it had breached a duty owed to her to monitor disbursements of the construction loan proceeds. First Security Bank denied such a duty and was granted summary judgment on the issue. Wooden appeals from that and other related orders. We affirm.

On August 21, 1985, appellant Tanya Wooden (Wooden) entered into an agreement with First Security Bank of Idaho, N.A. (FSB) entitled "Building Loan Agreement and Assignment of Account." Under the terms of the agreement, FSB agreed to make a $45,000 construction loan to Wooden to build a house on real property then owned by Wooden. Wooden's repayment obligation was evidenced by a short term note which was secured by a deed of trust. The long term financing was to be provided by the Idaho Housing Authority (IHA) which had approved her home loan which was to close by March 3, 1986, when the construction was scheduled to be completed.

Terry Yeary was chosen by Wooden to be the general contractor for the construction, and he signed Wooden's loan agreement as guarantor. The construction commenced, and FSB made progress payments to Wooden by depositing loan proceeds directly to Wooden's personal account in the bank. Wooden, in turn, paid the contractor Yeary. However, Yeary did not pay all of his subcontractors, some of whom filed liens on the property. The home construction was nearly completed by January, 1986, and Greg Schultz, the manager of the Lewiston Mortgage Production Center for FSB, in preparation to closing out the construction loan, contacted the title company to secure a title policy. The title company informed Schultz that lien waivers would be required. Schultz then met with Wooden and Yeary, who said he would get the lien waivers. When Yeary could not obtain the lien waivers, Wooden first learned that Yeary had not paid the subcontractors. She also learned that the construction work was incomplete and defective. Eventually, materialmen and subcontractors filed liens totaling $16,618.85. Yeary also filed a lien for $21,991.62.

FSB extended the due date on the note from March 3, 1986, to September 1, 1986, in order to give Wooden additional time to obtain the required lien waivers. However, she was unsuccessful and the IHA loan was never closed, and Wooden defaulted on the FSB note.

This action was commenced on May 12, 1986, by a complaint for foreclosure of labor and material liens filed by Wayne's Electric & Sheet Metal, Inc. In addition to naming Wooden as a defendant, Wayne's Electric also sued Yeary and FSB.[1]

On March 10, 1987, Wooden responded to the complaint, denied the validity of the liens, counterclaimed against the claimants, and filed a crossclaim against Yeary and FSB. Wooden's crossclaim against FSB, upon which this appeal is based, alleged that FSB had a fiduciary duty arising "by contract, by the terms of the Uniform Commercial Code, and by common law implication," to "monitor and control disbursement of construction account funds and to require lien releases or waivers prior to authorizing advances...." Wooden sought damages for breach of that duty and a declaration invalidating the deed of trust.

FSB's answer to Wooden's crossclaim denied the existence of any duty to monitor or control the disbursements, or to secure lien waivers. FSB subsequently filed a motion for partial summary judgment on January 4, 1988, arguing that it owed no duty to Wooden either under the loan agreement or under the common law. On March 24, 1988, the trial court granted FSB's motion for summary judgment. Wooden appeals the summary judgment order.

The standard for reviewing a trial court's grant of summary judgment is clear. A motion for summary judgment is proper only when "there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987). The issue we must decide is whether on this record there is an issue of fact over whether FSB owed either a contractual or common law duty to Wooden to monitor disbursements of the loan proceeds and obtain lien releases from the contractors and materialmen before disbursements were made.

■ At common law, a mortgagee was generally not obligated to protect the interest of a mortgagor. *Laight v. Idaho First Nat. Bank*, 108 Idaho 211, 697 P.2d 1225 (Ct.App.1985); *Prudential Insurance Co. of America v. Executive Estates, Inc.*, 174 Ind.App. 674, 369 N.E.2d 1117 (1977); *Liberty Nat. Bank & Trust Co. v. Kaibab Industries*, 591 P.2d 692 (Okl.1978). A duty would exist only if there is an agreement creating a duty, or if the lender exercises complete control over the disbursement of the funds. *Laight, supra; Prudential, supra.*

■ Wooden argues that the agreement implicitly created a duty or at the very least is ambiguous and therefore an issue of fact still exists as to FSB's duty. However, the trial court concluded that the agreement was not ambiguous and correctly noted that the interpretation of an unambiguous document is a question of law for the court. *St. Clair v. Krueger*, 115 Idaho 702, 769 P.2d 579 (1989); *DeLancey v. DeLancey*, 110 Idaho 63, 714 P.2d 32 (1986). Similarly, the determination of whether a document is ambiguous is itself a question of law for the court. *DeLancey, supra; Roeder Min., Inc. v. Johnson*, 118 Idaho 96, 794 P.2d 1152 (Ct.App.1990).

■ We have reviewed the loan agreement and agree with the trial court that it is not ambiguous and does not impose any duty, fiduciary or otherwise, upon the bank to supervise the disposition of the loan

---

1. Other subcontractors also sued and various crossclaims and counterclaims were filed. All of these claims have since been dismissed and the only claim left is that between Wooden and FSB.

proceeds or to obtain lien waivers.[2] The loan agreement specifically provides that, "Before requesting any payment, the undersigned agree to furnish the Bank, if requested, lien waivers or lien subordination receipts in form and substance satisfactory to the Bank...." Further, while the loan agreement reserved the right in the bank to pay materialmen and laborers directly, FSB did not exercise that right under the contract, but deposited the construction loan proceeds directly into Wooden's account, and she disbursed the loan funds to the contractor Yeary.[3]

 Wooden also argues that there was a triable issue of fact over whether or not the bank "breaches an implied covenant of good faith and fair dealing when it fails to protect a borrower's property from lien." While a borrower-lender contract imposes upon both parties a covenant of good faith and fair dealing, that covenant only requires "that the parties perform in good faith the obligations imposed by their agreement," and "there is no basis for claiming implied terms contrary to express rights contained in the parties' agreement." *Idaho First National Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841 (1991); *First Security Bank of Idaho v. Gaige*, 115 Idaho 172, 765 P.2d 683 (1988). As earlier discussed, the loan agreement between First Security Bank and Wooden placed the obligation for obtaining lien waivers or lien subordination receipts on Wooden, not upon the bank. Accordingly, there is no basis for Wooden's claim that the agreement imposed on the bank an implied covenant to protect Wooden's property from liens.

We conclude that the trial court did not err in granting summary judgment in favor of FSB. Our disposition of these issues renders moot the other issues raised by the appellant.

The judgment of the district court is affirmed. Costs to respondent. No attorney fees allowed.

JOHNSON, BOYLE and McDEVITT, JJ., and SCHROEDER, J. pro tem., concur.

---

**2.** The relationship between a borrower and a lender is a debtor-creditor relationship, not a fiduciary relationship. *Idaho First National Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841 (1991 Opinion No. 133, filed September 27, 1991); *Black Canyon Racquetball Club, Inc. v. Idaho First National Bank*, 119 Idaho 171, 804 P.2d 900 (1991).

**3.** In January of 1986, when it became apparent that Yeary was not paying his subcontractors and materialmen, the bank refused to disburse the remaining balance of the construction proceeds without lien waivers. However, prior to that time the bank made progress payments directly to Wooden when requested by her, without requiring any lien waivers. By January, 1986, those advances totaled approximately $35,000.00.