10 P.3d 751

Jose and Mary MADRID, Plaintiffs,

v.

Jack ROTH d/b/a Jack Roth Construction, Defendant.

Canyonside Enterprises, Inc., an Idaho corporation, dba ABC Seamless Siding; Ron Smith, dba Ron Smith Plumbing; and Electrical Contractors, L.L.C., an Idaho corporation, Plaintiffs,

v.

Jose Luis Madrid aka Jose Madrid and Mary Karen Madrid aka Mary Madrid, husband and wife; Titlefact, Inc., an Idaho corporation; First Federal Savings Bank of Twin Falls; and Jack Roth, a married man, Defendants.

Jose Luis Madrid aka Jose Madrid and Mary Karen Madrid, aka Mary Madrid, husband and wife, Cross claimants-Appellants,

v.

First Federal Savings Bank of Twin Falls, Cross defendant-Respondent.

First Federal Savings Bank of Twin Falls, Cross claimant,

v.

Jack Roth, a married man, Cross defendant.

No. 25450.

Court of Appeals of Idaho.

Aug. 1, 2000.

Rehearing Denied Sept. 15, 2000.

Hutchinson, Lammers Clark, Chtd., Twin Falls, for appellant. Eric R. Clark argued.

Coleman, Ritchie Robertson, Twin Falls, for respondent. John S. Ritchie argued.

SCHWARTZMAN, Judge.

Jose and Mary Madrid (the Madrids) appeal from the denial of their motion for summary judgment and the grant, of summary judgment to First Federal Savings Bank of Twin Falls (First Federal).

## I.

### FACTS AND PROCEDURE

The Madrids sought to build a home in Gooding County. They obtained financing from First Federal and, as a part of the parties' agreement, the Madrids were required to execute a "construction loan agreement" (CLA), which was entered into on May 15, 1996. The Madrids selected Jack Roth, d/b/a/ Jack Roth Construction, to be their contractor, and the selection of subcontractors was left to the Madrids and Roth. Pursuant to the CLA, First Federal periodically disbursed funds from the loan during construction to pay for materials and completed labor. The disbursed checks were made payable to both the Madrids and Roth.

Several months after the home was finished, in January of 1997, the Madrids received notice that four liens were filed against their new home because several subcontractors had not been paid for materials or labor put into the home. The Madrids filed suit against Roth in February of 1997 for breach of the CLA; Roth fled Idaho. On June 26, the lienholders filed suit against the Madrids and First Federal to foreclose their liens. One month later, in their answer and cross-claim against First Federal, the Madrids alleged breach of contract and breach of fiduciary duty. First Federal answered the Madrids' cross-claim and cross-claimed against Roth. First Federal declined to pay the subcontractors' liens and denied any breach of the CLA on its part. The lien foreclosure case and the contract actions were consolidated and on the same day, the district court entered a default judgment against Roth in favor of the Madrids. However, one month later, a stipulated judgment was entered against the Madrids as to the lienholders' suit against them. The Madrids paid all amounts then owing to the subcontractors, an amount close to $20,000.

Thereafter, the Madrids moved for summary judgment concerning their breach of contract and breach of fiduciary duty claims against First Federal; the bank then filed its crossmotion for summary judgment. After a hearing, the district court denied the Madrids' motion for summary judgment and granted First Federal's cross-motion. On December 22, the Madrids filed a motion for reconsideration and clarification. After another hearing, the district court denied this motion. The Madrids appeal.

## II.

### NO FIDUCIARY DUTIES WERE CREATED BETWEEN FIRST FEDERAL AND THE MADRIDS BY THE CLA

#### A. Standard of Review

The Madrids contend that First Federal's conduct and the CLA created a fiduciary duty. When assessing a motion for summary judgment, all disputed facts are to be liberally construed in favor of the party opposing the motion. Furthermore, the trial court must draw all reasonable inferences in favor of the same party. *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994). On appeal, courts exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986).

#### B. Analysis

Generally, the relationship between a borrower and lender is a debtor-creditor relationship, not a fiduciary relationship. *Idaho First National Bank v. Bliss Valley*

*Foods, Inc.,* 121 Idaho 266, 277, 824 P.2d 841, 852 (1991). However, fiduciary duties may arise between lenders and borrowers in limited circumstances where there is "an agreement creating a duty, or if the lender exercises complete control over the disbursement of funds." *Wooden v. First Security Bank of Idaho, N.A.,* 121 Idaho 98, 100, 822 P.2d 995, 997 (1991).

■ The Madrids claim that First Federal expressly retained exclusive control over disbursement of the construction funds because "no one had authority to make disbursements other than First Federal." The Madrids assert that First Federal had absolute control over the money, thus a fiduciary duty was owed by First Federal to them.

In *Laight v. Idaho First National Bank,* 108 Idaho 211, 214, 697 P.2d 1225, 1228 (Ct. App.1985), we rejected a similar claim by a homeowner, finding that:

> the Laights did control disbursement to a significant degree ... [because] the funds were periodically disbursed to the Laights ... only at their request, in the form of checks made payable jointly to them and their builder.... If the subcontractors were not being paid, the Laights could have simply refused to endorse the checks until they were. The Laights thus had sufficient control to protect their interest against the possibility that the subcontractors were not being paid.

The Madrids had similar control over disbursement of their loan funds. The proceeds were distributed in four separate installments and only at the Madrids' request. Much as in *Laight,* the checks were issued jointly to the Madrids and Roth, thus giving the Madrids control over ultimate disbursement to Roth and thereby, to the subcontractors.

Similar to *Wooden, supra,* the CLA does not expressly create any fiduciary duties owed by the lender to the borrower. Moreover, First Federal did not retain exclusive control over the construction funds. Accordingly, we affirm the district court's grant of summary judgment in favor of First Federal on the Madrids' claim for breach of fiduciary duty.

## III.

## INTERPRETATION OF COEXISTING CONTRACT TERMS: AMBIGUITY

### A. Standard of Review

■ The Madrids next contend that the CLA created a contractual duty in First Federal to protect them by obtaining lien waivers or lien releases before it disbursed their money. Whether a contract is ambiguous is a question of law subject to free review. *Bilow v. Preco, Inc.* 132 Idaho 23, 28, 966 P.2d 23, 28 (1998). Only when interpretation of ambiguous terms of a contract is required are questions of fact presented for determination. On the other hand, where a contract is clear and unambiguous, not involving any absurdities or contradictions, it is the best evidence of the intent of the parties and hence a determination of its meaning and its legal effect are a question of law. *Minidoka County for Use and Benefit of Detweiler Bros., Inc. v. Krieger,* 88 Idaho 395, 416, 399 P.2d 962, 975 (1964).

### B. Paragraph 3(b) of the CLA, Read in Conjunction with Paragraph 7, Does Not Impose a Contractual Duty Upon First Federal to Secure Lien Waivers for the Madrids' Protection

■ First Federal made a total of four loan disbursements over the course of the construction of the Madrids' home. Paragraph 3(b) of the CLA provides that First Federal "shall disburse monies from the construction fund ... upon ... [s]ubmission of evidence *satisfactory to the Lender* that all labor or materials actually in the improvements have been paid for or that payment therefore will be made from the proceeds." (Emphasis added.) Paragraph 7 provides that "[a]ll inspections and other services rendered by the Lender shall be rendered solely for the protection and benefit of the Lender and the Owner(s) shall not be entitled to claim loss or damage against the Lender for failure to discharge its duties properly." Based upon the plain meaning of these contract terms, we conclude that the district court was correct in granting summary judg-

ment to First Federal as to this issue because paragraph 3(b) was an "elective or discretionary procedure ... for the protection of First Federal, and not the Madrids." *See Laight,* 108 Idaho at 213, 697 P.2d at 1227.

### C. Paragraph 3(d) of the CLA, Read in Conjunction with Paragraph 7, Creates an Unresolvable Ambiguity in the CLA, Making Summary Judgment Below Improper

 Paragraph 3(d) provides that First Federal shall not make the final construction loan disbursement until "the contractor has furnished an affidavit to the Lender and Owner(s) as required by the Mechanic's Lien Law and as required by the Lender" and not until "valid releases of lien from the Contractor, the architect, the engineer, all materialmen, and all subcontractors ... have been submitted to the Lender." Unlike paragraph 3(b) discussed above, 3(d) does not give First Federal any discretion. A plain and usual reading of the language of paragraph 3(d) would entitle the Madrids to assume that First Federal received lien waivers from the subcontractors before making the final disbursement. First Federal acknowledges that it did not receive lien waivers from "all subcontractors" before disbursing the final $9,000 to the Madrids.

On the other hand, paragraph 7 provides that "[a]ll inspections and other services rendered by the Lender shall be rendered solely for the protection and benefit of the Lender and the Owner(s) shall not be entitled to claim loss or damage against the Lender for failure to discharge its duties properly." If paragraph 7 is given its plain and usual meaning, it could render First Federal's promise in paragraph 3(d), to not make the last disbursement until it received lien waivers from all the subcontractors, illusory or otherwise mutually repugnant. *Compare Laight,* 108 Idaho at 213, 697 P.2d at 1227.

 Where two clauses are inconsistent and conflicting, they should be construed so as to give effect to the intention of the parties as gathered from the whole contract. "Apparently conflicting provisions must be reconciled so as to give meaning to both,

rather than nullifying any contractual provision, if reconciliation can be effected by any reasonable interpretation of the entire instrument." 17A C.J.S. *Contracts* § 324 (1999). Thus, where possible, a construction will be placed upon ambiguous or apparently inconsistent provisions of a contract as will give protection to both parties, as against a construction which would only be in the interest of one of the parties to the contract. *Allen v. Ruby Co.,* 87 Idaho 1, 11, 389 P.2d 581, 587 (1964). However, exculpatory clauses generally are not favored and are strictly construed against the drafter. 17A C.J.S. *Contracts* § 342 (1999).

All of these principles of construction preclude the granting of full summary judgment in favor of First Federal. First Federal urges that this case closely resembles *Laight, supra,* wherein we held that the lender had adequately absolved itself of liability for failure to obtain subcontractor lien waivers prior to disbursement because of the exculpatory language contained in the respective agreements. We do not agree.

In *Laight,* the parties' agreement, drafted by the lender, contained a provision written in all capital letters stating "IT SHALL BE THE OWNER/BORROWER's SOLE RESPONSIBILITY TO ASCERTAIN TO HIS SATISFACTION, THE PROGRESS OF THE CONSTRUCTION PROJECT AND THE STATUS OF CORRESPONDING SUBCONTRACTOR PAYMENTS PRIOR TO ENDORSEMENT OF ANY DISBURSEMENT CHECKS." First Federal, as the drafter of the instant agreement, had every opportunity to draft a clear, concise, and conspicuous provision like the lender in *Laight,* but rather chose to promise not to make the final disbursement until it received "valid releases of lien from ... all subcontractors" and then try to shield itself from liability by including a general exculpatory clause appearing later in the contract.

Paragraph 3(d) is contradictory to and inconsistent with paragraph 7, thus rendering the CLA ambiguous. Because ambiguity exists in the parties' agreement, the district court's grant of summary judgment to First

Federal as to the last disbursement was improper.

## IV.

## CONCLUSION

The district court's grant of summary judgment to First Federal is affirmed as to the issues of fiduciary duties owed to the Madrids by First Federal and as to contractual duties owed by First Federal to the Madrids concerning the disbursements of construction loan funds, excluding the last $9,000 disbursement. As to the last disbursement, the district court's grant of summary judgment is reversed. The award of attorney fees to First Federal is vacated pending resolution of the remanded issue. Both parties having prevailed in part on appeal, they are each to bear their own costs and attorney fees. The case is remanded to the district court for further proceedings consistent with the views expressed herein.

Chief Judge PERRY and Judge LANSING concur.