OPINION
{¶ 1} This is an appeal and a cross-appeal from post-judgment orders the trial court entered in a medical malpractice case. *Page 2 
 {¶ 2} Plaintiff, Derek Stephenson, was born on July 27, 1991. Within one month following his release from the hospital where he was born, Derek began to experience severe respiratory problems. His parents brought Derek to Defendant, Upper Valley Family Care, Inc. ("UVFC") for diagnosis and treatment by its physician-employees. Then and over the following eleven years, multiple UVFC physicians treated Derek for a variety of ailments they diagnosed, such as sinusitis, bronchitis, rhinitis and asthma. During that time Derek had a total of sixty-three office visits at UVFC and one hospitalization. Fifteen telephone calls concerning him were also made to UVFC by his parents. Of these contacts, fifty-eight involved respiratory problems.
 {¶ 3} None of the efforts made by UVFC physicians resolved Derek's respiratory problems, which included coughing, wheezing, congestion, lung impairments and related complaints. It was not until October 1, 2001 that UVFC's family-practice physicians referred Derek to a specialist in ear, nose and throat ailments, who in turn referred Derek to an allergist. The allergist recommended a test to determine whether Derek suffers from cystic fibrosis. The test was performed, and its results revealed that Derek suffers from cystic fibrosis.
 {¶ 4} Cystic fibrosis is a progressive lung disease that typically is fatal when the victim is a young adult. There is *Page 3 
no cure, but its symptoms may be alleviated by treatment. The form of cystic fibrosis from which Derek suffers is a milder form and more difficult to diagnose.
 {¶ 5} Derek and his parents commenced an action against UVFC and its physicians who had treated him on claims for relief alleging medical malpractice for their failure to diagnose and treat his cystic fibrosis condition over the more than ten-year period in which they had treated him for other respiratory illnesses. The case was tried to a jury, which returned verdicts in favor of Derek and against two UVFC physicians, Drs. Plumb and Critchly, in the amounts of $ 100,000 as and for compensatory damages and $ 300,000 as and for punitive damages. The trial court entered corresponding judgments against those physicians and UVFC. No other UVFC physicians who had treated Derek were found liable, and no damages were awarded to Derek's parents.
 {¶ 6} The Defendants filed a motion for judgment notwithstanding the verdict on the punitive damages award. The trial court granted that motion and vacated the award. Because of that order, the trial court also vacated its judgment for attorney fees in the amount of $ 120,000 it had ordered on a verdict of the jury.
 {¶ 7} Derek moved for a new trial on the award of *Page 4 
compensatory damages, arguing that $ 100,000 is insufficient. The trial court granted the motion, which it made conditional on the Defendants' agreement to an additur the court ordered increasing the award to $ 350,000. The Defendant declined to agree to the additur.
 {¶ 8} Finally, with respect to the award of compensatory damages, the trial court denied Derek's motion for prejudgment interest.
 {¶ 9} Derek filed a timely notice of appeal. The two Defendant physicians and UVFC filed a timely notice of cross-appeal.
 Derek Stephenson's Appeal FIRST ASSIGNMENT OF ERROR
 {¶ 10} "THE TRIAL COURT ERRED WHEN IT GRANTED JUDGMENT NOTWITHSTANDING THE VERDICT WITH RESPECT TO PUNITIVE DAMAGES BECAUSE THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT."
 {¶ 11} Motions for a directed verdict during trial and for a judgment notwithstanding the verdict following trial are authorized by Civ. R. 50(A) and (B), respectively. "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence *Page 5 
adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. McNees v. Cincinnati Street Ry. Co. (1949),152 Ohio St. 269, 89 N.E.2d 138; Ayers v. Woodard (1957), 166 Ohio St. 138,140 N.E.2d 401; Civ. R. 50(A) and (B)." Posin v. A.B.C. Motor Court Hotel,Inc. (1976), 45 Ohio St.2d 271, 275.
 {¶ 12} A motion for judgment notwithstanding the verdict presents an issue of law. Though the court does not weigh the evidence or consider the credibility of the witnesses, the court must evaluate the evidence for its sufficiency in relation to the legal standard governing the claim or defense which the motion involves. Furthermore, being a determination as a matter of law, the trial court's judgment granting or denying the motion is reviewed on appeal de novo. O'Day v. Webb (1972),29 Ohio St.2d 215.
 {¶ 13} An award of punitive damages requires proof of actual malice, and the theory on which Plaintiff bases his *Page 6 
punitive damages claim requires proof of a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. Preston v. Murty (1987), 32 Ohio St.3d 334. That proof is satisfied by evidence of "extremely reckless behavior revealing a conscious disregard for a great and obvious harm" or of "`negligence . . . so gross as to show a reckless indifference to the rights and safety of other persons.'" Id., at 335, quoting Gearhart v.Angeloff (1969), 17 Ohio App.2d 143.
 {¶ 14} In either of those alternatives for an award of punitive damages, "[s]ince punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required." Preston, 32 Ohio St.3d at 335. Furthermore, that element requires proof of a defendant's subjective knowledge of the danger posed to another by his act or omission. Malone v. Courtyard By MarriottLimited Partnership, 74 Ohio St.3d 440, 1996-Ohio-311.
 {¶ 15} Plaintiff argues that evidence sufficient for the award of punitive damages the jury made exists in the fact that, for over ten years, UVFC and Drs. Plumb and Critchly failed to diagnose and treat his cystic fibrosis condition. Plaintiff contends that these failures portray wanton *Page 7 
misconduct constituting an abandonment of the patient, and a resulting reckless disregard for his well-being. Courtney v. Taylor (1998),125 Ohio App.3d 487. Plaintiff also relies on the testimony of his expert, Dr. Nussbaum, that Defendants' failure to diagnose and treat Derek's cystic fibrosis over the course of their lengthy treatment of his many respiratory problems so departed from their duty of care as to be "reckless." (T. Vol. II, pp. 452-456).
 {¶ 16} Dr. Nussbaum's opinion that Defendants were reckless, which appears to have been volunteered, was improper. His expertise qualified him to opine that Defendants' acts or omissions fell below the standard of conduct that good practice requires, which is proof of negligence for purposes of a medical malpractice claim. Berdyck v. Shinde,66 Ohio St.3d 573, 1993-Ohio-183. He could also, if asked, quantify the degree or extent of Defendants' departure from good practice that would permit the jury to find "negligence . . . so gross as to show a reckless indifference to the rights and safety of other persons." Preston v.Murty. But, Dr. Nussbaum could not opine that Defendants were reckless, which is a legal conclusion reserved for the jury.
 {¶ 17} More fundamentally, however, neither Dr. Nussbaum's *Page 8 
testimony nor the other evidence of Defendants' failure to diagnose and treat Derek's cystic fibrosis condition portrays any subjective knowledge on the part of Defendants of the danger their acts or omissions posed to Derek, which is necessary to prove the conscious wrongdoing an award of punitive damages requires. To the contrary, and unlike in Courtney v. Taylor, wherein a patient died after her cardiologist walked out of the hospital to play tennis, Defendants treated Derek and actively attempted to diagnose his condition. Appointments were scheduled and kept, and some form of treatment appropriate to the diagnoses that were made was prescribed. Those diagnoses were not inappropriate to the symptoms Derek presented. There is no evidence that Defendants knew they were unable to diagnose cystic fibrosis, or that Derek's symptoms absolutely indicated that illness. There is ample evidence of negligence constituting medical malpractice, but "[p]unitive damages may not be assessed against `one who acts under innocent mistake in engaging in conduct that nevertheless constitutes a tort.'" Rios v. Bigler, M.D. and Welch, M.D. (D. Kan. 1994),847 F. Supp. 1538, 1549, quoting Iola State Bank v. Bolan (1984), 235 Kan. 175,192.
 {¶ 18} On this record, the evidence is insufficient as a *Page 9 
matter of law for reasonable minds to find that Defendants' acts or omissions in treating Derek involved the element of conscious wrongdoing required for an award of punitive damages. Preston v. Murty. Therefore, the trial court properly granted Defendants' motion for judgment notwithstanding the verdict and vacated its prior judgment awarding punitive damages on the verdict of the jury.
 {¶ 19} Plaintiff-Appellants' first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 20} "THE TRIAL COURT ERRED WHEN IT DENIED PREJUDGMENT INTEREST TO THE PLAINTIFFS."
 {¶ 21} R.C. 1343.03(C)(1) provides:
 {¶ 22} "If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as *Page 10 
follows:"
 {¶ 23} The following several divisions of that section identify, based on different facts and circumstances, the date from which interest is computed.
 {¶ 24} Plaintiff filed a motion for an order requiring payment of prejudgment interest on the judgments for compensatory and punitive damages the trial court entered on the jury's verdicts. The court conducted a hearing on the motion. The court subsequently overruled Plaintiff's motion. The court found that while the Defendants had failed to make a good faith effort to settle the case, Plaintiffs also failed to make a good faith effort, stating:
 {¶ 25} "On the other hand, the Plaintiffs did not prove that they make a reasonable offer of settlement worthy of a response. The Plaintiffs' initial verbal settlement offer of 2.5 million dollars stood firm until the $ 750,000 verbal settlement offer was made shortly prior the the jury's verdict. The two unrealistically high offers made by Plaintiffs, the timing of the offers, the lack of any written offers, and other circumstances indicates that the Plaintiffs did not aggressively attempt to settle the case.
 {¶ 26} "`R.C. 1343.03(C) requires the party seeking prejudgment interest to demonstrate its aggressive prejudgment *Page 11 
settlement efforts and its adversary's lack of aggressive prejudgment settlement efforts.' Sindel v. Toledo Edison Co. (1993),87 Ohio App.3d 525, 533, Black v. Bell (1984), 20 Ohio App.3d 84, 88, Garcia v.Cleveland Clinic, Cuyahoga App. No. 77011, August 31, 2000.
 {¶ 27} "The Court finds that neither party aggressively attempted to settle the case. Therefore, the Plaintiffs' motion for prejudgment interest is overruled." (Order, March 7, 2007, Dkt. 86).
 {¶ 28} We review the error assigned on an abuse of discretion standard. Lewis v. Alfa Laval Separation, Inc. (1998),128 Ohio App.3d 200.
 {¶ 29} "`Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248,1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.
 {¶ 30} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be *Page 12 
persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." AAAA Enterprises, Inc. v. River PlaceCommunity Redevelopment (1990), 50 Ohio St.3d 157, 161.
 {¶ 31} In Kalain v. Smith (1986), 25 Ohio St.3d 157, the Supreme Court considered the good faith standard imposed by R.C. 1343.03(C), and held:
 {¶ 32} "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." Id., Syllabus by the Court.
 {¶ 33} Subsequently, discussing its holding in Kalain, the Supreme Court wrote:
 {¶ 34} "The effect of Kalain is to place the burden of proof on a party seeking prejudgment interest. This is, to a degree, unfortunate since much of the information needed to make a case for prejudgment interest is in the possession of *Page 13 
the party resisting an award. Accordingly, it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle. Other factors would include responses-or lack thereof-and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient. These factors, and others where appropriate, should also be considered by a trial court in making a prejudgment interest determination." Moskovitz v. Mt. Sinai MedicalCenter (1994), 69 Ohio St.3d 638, 659, 1994-Ohio-324.
 {¶ 35} The trial court held a hearing on Plaintiff's motion for prejudgment interest on March 2, 2007. Plaintiff's counsel testified that he initially made an oral demand to settle the case for $ 2.5 million, based on his evaluation of the Defendants' negligence, their policy limits, and the prospects of a punitive damages award, and that he received no response to this demand. The following colloquy ensued:
 {¶ 36} "Q. When you did not receive a response to your demand of, pretrial demand of two point five million dollars, did you at any time prior to trial re-evaluate your position *Page 14 
on settlement and offer a lower demand?
 {¶ 37} "A. Yes, through conversations and pre-judgment, in pre-trial hearings and at other times with Mr. Goldwasser. He had made it clear there would be no offer.
 {¶ 38} "Q. So you're saying before trial you lowered your demand of two point five million dollars?
 {¶ 39} "A. Sure did. Told him we were willing to talk about it an any level, and told him at one point my evaluation was about seven fifty.
 {¶ 40} "Q. Before trial you said your evaluation, your clients would be willing to accept $ 750,000.00.
 {¶ 41} "A. Yes. I said I would recommend that to my clients.
 {¶ 42} "Q. You didn't say that that's the demand that if accepted you would take?
 {¶ 43} "A. Yes.
 {¶ 44} "Q. I think you just qualified you had to have those discussions with your clients about that.
 {¶ 45} "A. I talked to my clients numerous times and they said they felt confident in me to make an appropriate settlement discussion. May I assure (sic) that any figure I approached was rejected and I was told it was going to trial.
 {¶ 46} "Q. Did you communicate to Mr. Goldwasser or anyone *Page 15 
at Reminger and Reminger that if offered $ 750,000.00 you would accept that amount prior to trial?
 {¶ 47} "A. Yes, I did.
 {¶ 48} "Q. Who did you tell?
 {¶ 49} "A. Mr. Goldwasser. I had no doubt that Mr. Goldwasser and all members of Reminger know they could have settled this case $ 750,000.00.
 {¶ 50} "Q. Did you ever put that settlement demand in writing?
 {¶ 51} "A. I don't know if I did or not. I was looking at my secretary and I don't know if we did or not.
 {¶ 52} "Q. You're shaking your head no, would you like to look at your file?
 {¶ 53} "A. No, if she says no, I probably didn't." (T. 89-90).
 {¶ 54} R.C. 1343.03(C)(1) requires the court to determine whether a plaintiff failed to make a good faith effort toward settlement. That duty contemplates engaging in the bargaining process with an open mind and a view toward settlement. With respect to medical malpractice claims, a plaintiff does not fail to satisfy the duty that R.C. 1343.03(C)(1) imposes when the plaintiff makes an offer of settlement which is reasonable in relation to credible medical evidence that the defendant *Page 16 
physician fell short of the standard of professional care required of him, when it is clear that the plaintiff has suffered injuries, and when the causation of those injuries is arguably attributable to the defendant's conduct. Galayda v. Lake Hospital System, Inc.,71 Ohio St.3d 421, 1994-Ohio-64.
 {¶ 55} The trial court found that neither Plaintiff nor the Defendants made a good faith effort to settle the case. Defendants argue that they acted on a good faith, objectively reasonable belief that they had no liability, and therefore were not required to make a settlement offer. However, Defendants do not assign error in that respect in the cross-appeal before us. Therefore, the correctness of the court's finding with respect to the conduct of Defendants is not before us for review.
 {¶ 56} Plaintiff's counsel testified that, in view of Defendant's refusal to respond to his demands, "I couldn't negotiate against myself." (T. 86). That's correct, insofar as it goes. But, as the movant for prejudgment interest, it was Plaintiff's burden to show that he pursued settlement aggressively. Sindel v. Toledo Edison Co. That contemplates a showing that Plaintiff marshaled the evidence he intended to introduce relevant to liability and damages and presented it to his adversary as a foundation for the demand or demands he *Page 17 
made. No such showing was made.
 {¶ 57} Plaintiff's counsel also testified that the $ 750,000.00 counter-offer he made to a $ 100,000 settlement offer from Defendants while the jury was in deliberations was based on his prior $ 750,000 offer. The trial court found that the later $ 750,000 counter-offer, like the initial $ 2.5 million demand, was "unrealistically high" and therefore not reasonable. The trial court also weighed the lack of any written offers by Plaintiff.
 {¶ 58} We agree that a plaintiff who seeks prejudgment interest pursuant to R.C. 1343.03(C) has a burden to demonstrate that he did more than merely make an unsupported demand for policy limits. However, whether either offer Plaintiff made was unrealistically high should also take into consideration any damages the jury actually awarded. Having correctly granted a judgment n.o.v. on the award of punitive damages, which likewise eliminated the prospect of an award of attorney's fees, the court was left with a compensatory damages award of only $ 100,000. Plaintiff's initial demand was twenty-five times that, and his subsequent demand was seven and one-half times as large. On those comparisons, Plaintiff's demands may be found to be unrealistically high. Nevertheless, because the court also ordered a new trial on *Page 18 
the issue of compensatory damages, those comparisons are no longer relevant. Plaintiff's request for prejudgment interest must therefore await determination of compensatory damages by the jury in the new trial the court ordered.
 {¶ 59} Plaintiff-Appellant's second assignment of error is sustained.
THIRD ASSIGNMENT OF ERROR
 {¶ 60} "THE TRIAL COURT ERRED WHEN IT REDUCED THE AMOUNT OF PLAINTIFFS ATTORNEY'S FEES AND DENIED RECOVERY OF LITIGATION EXPENSES."
 {¶ 61} The jury returned a verdict awarding Plaintiff his attorney's fees. After a hearing, the trial court entered a judgment for Plaintiff in the amount of $ 120,000 as and for attorney's fees. However, after granting Defendants' motion for a judgment notwithstanding the verdict on punitive damages the jury had assessed against Defendants, the trial court likewise vacated its judgment awarding punitive damages.
 {¶ 62} Plaintiff argues that the trial court abused its discretion when it awarded only $ 120,000 for his attorney's fees, because he is entitled to a larger award. However, the threshold issue is whether he is entitled to any award at all.
 {¶ 63} An award of attorney's fees is an element of damages, and because, as a general rule, a party is *Page 19 
responsible for his own attorney's fees, an award of attorney's fees is unavailable in a tort action except (1) pursuant to statute or (2) as an element of compensatory damages where the jury finds that punitive damages are warranted. Zoppo v. Homestead Insurance Co.,71 Ohio St.3d 552, 1994-Ohio-461.
 {¶ 64} Plaintiff does not rely on a statutory right to attorney's fees. The trial court, having vacated the jury's award of punitive damages, properly also vacated its prior award of attorney's fees.Zoppo. Because we found that the trial court did not err in so doing, we necessarily overrule the error that Plaintiff assigns with respect to his claim for attorney's fees.
 {¶ 65} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 66} "THE TRIAL COURT ERRED WHEN FAILED TO ENTER JUDGMENT JOINTLY AND SEVERALLY AGAINST THE DEFENDANT PHYSICIANS AND THEIR CORPORATION."
 {¶ 67} UVFC and six of its employee physicians as well as an unspecified number of John and Jane Does were named by Plaintiff as defendants in the medical malpractice action Plaintiff commenced. The jury returned verdicts against two of the named physicians, Drs. Plumb and Critchley. The trial *Page 20 
court entered judgments against those two physicians and UVFC, jointly and severally, in the amounts of $ 100,000 as and for compensatory damages and $ 300,000 as and for punitive damages. (Dkt. 83). The punitive damages award was subsequently vacated.
 {¶ 68} Plaintiff argues that the trial court erred when it failed to enter judgment against UVFC on a theory of respondeat superior, which imputes to an employer liability for the undirected negligent act of its employee. American Insurance Group v. McCowin (1966), 7 Ohio App.2d 62. The short answer to this contention is that the trial court did enter a judgment against UVFC.
 {¶ 69} Plaintiff also argues that the trial court erred when it failed to enter judgment against the other defendant physicians who had treated Plaintiff, because Drs. Plumb and Critchley both testified that all UVFC physicians were responsible for Plaintiff's care. However, the jury returned verdicts against only Drs. Plumb and Critchley, and the trial court could enter judgment only against those two defendants. Civ. R. 58(A).
 {¶ 70} The fourth assignment of error is overruled.
 Defendant UVFC's Cross-Appeal ASSIGNMENT OF ERROR *Page 21 
 {¶ 71} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING PLAINTIFF-APPELLANT'S MOTION FOR ADDITUR CONDITIONED ON DEFENDANTS' ACCEPTANCE."
 {¶ 72} Plaintiff moved for an additur to judgment the court entered on the jury's verdict awarding compensatory damages of $ 100,000, or in the alternative for a new trial on the issue of the amount of compensatory damages he is due. (Dkt. 73). The trial court granted the motion, vacating the jury's verdict and ordering an additur in the amount of $ 350,000 as and for compensatory damages. The court conditioned the additur on its acceptance by the Defendants. Failing that, the court ordered a new trial on the issue of compensatory damages, finding that the jury's $ 100,000 award "is inadequate and in error based on the evidence and the law. The damage amount awarded by the jury is below the realm of proper compensation." (Dkt. 88).
 {¶ 73} Defendants declined to consent to the additur. When an additur is rejected, its amount in relation to the evidence or whether the court erred in providing for or arriving at the amount of the additur is moot.Board of Commissioners of Paulding County v. Reimund (Feb. 20, 1985), Paulding App. No. 11-83-12. The only issue is whether the court abused its discretion when it ordered the new trial that it conditioned *Page 22 
on rejection of the additur. Id.
 {¶ 74} Civ. R. 59(A)(6) permits a court to order a new trial on all or part of the issues that were determined by a trial when "[t]he judgment is not sustained by the weight of the evidence." In addressing that claim, the court must review the evidence and pass in a limited way on the credibility of the witnesses. Atkinson v. International Technegroup,Inc. (1995), 106 Ohio App.3d 349. It must appear to the court that a manifest injustice has been done and that the verdict is against the manifest weight of the evidence. Rhode v. Farmer (1970),23 Ohio St.2d 82. A verdict is not against the manifest weight of the evidence merely because the judge would have decided differently. Parm v. Patton (1969),20 Ohio App. 2d 83.
 {¶ 75} We review the trial court's decision to grant a new trial on the abuse of discretion standard. Tobler v. Hannon (1995),105 Ohio App.3d 128. Whether that standard requires reversal is determined on a case-by-case basis, in relation to the facts involved. Mannion v.Sandel, 91 Ohio St.3d 318, 2001-Ohio-47. However, as applied to review of a decision to grant a new trial, "the abuse of discretion standard requires a reviewing court to `view the evidence favorably to the trial court's action rather than to the original jury's verdict.'" *Page 23 
 Malone v. Courtyard By Marriott Limited Partnership,74 Ohio St.3d 440, 448, 1996-Ohio-311, quoting Rhode v. Farmer, at 94. "This deference to the trial court's grant of a new trial stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the `surrounding circumstances and atmosphere of a trial.'" Id.
 {¶ 76} The trial court's order does not implicate or concern the issue of liability, which was determined in Plaintiff's favor. The order concerns only the amount of compensatory damages Plaintiff is due. The compensation awarded to one who is injured in person by the wrongful and unlawful act of another must be at least equivalent to, and should in all cases be commensurate with, the loss or injury actually sustained.Ott v. Schneiter (1936), 56 Ohio App. 359. Compensatory damages in a personal injury action include compensation for actual medical expenses, future medical expenses, past and future pain and suffering, disability, disfigurement, loss of enjoyment of life, and special damages.Fantozzi v. Sandusky Cement Products Col., 64 Ohio St.3d 601,1992-Ohio-138. Recovery for permanent injuries or for a lasting impairment to health are likewise proper elements of compensatory damages. Farley v. Ohio Department of *Page 24 
 Rehabilitation and Correction (1998), 128 Ohio App.3d 137.
 {¶ 77} Whether Derek suffered any longer-term or permanent injury as a proximate result of Defendants' conduct was a hotly contested issue. Defendants' experts opined he had not. The views of Plaintiff's expert, Dr. Nussbaum, opined that the deleterious results of a lack of treatment of Derek's cystic fibrosis during the ten years he was in the Defendants' care will increase "geometrically" in future years. (T. Vol. II, p. 472-3).
 {¶ 78} During the years of his care by Defendants, Derek endured numerous and debilitating symptoms of his cystic fibrosis condition which were not resolved. He had over fifty visits to Defendants' offices. These events were no doubt an important part of the first ten years of his life.
 {¶ 79} On this record, and giving deference to the trial court's ability to actually see and hear the evidence presented, we cannot find that the court abused its discretion when it found the jury's compensatory damages award of only $ 100,000 is not sustained by the weight of the evidence, and on that finding ordered a new trial pursuant to Civ. R. 59(A)(6). We agree that a new trial on that issue is warranted.
 {¶ 80} Defendants' cross-assignment of error is overruled. *Page 25 
 Conclusion {¶ 81} The judgment from which the appeal and cross-appeal were taken will be affirmed, except for the trial court's denial of prejudgment interest on the judgment awarding compensatory damages, which is reversed.
FAIN, J. And DONOVAN, J., concur.
Copies mailed to:
Dwight D. Brannon, Esq.
Matthew C. Schultz, Esq.
Brian D. Goldwasser, Esq.
Michael A. Baer, Esq.
 Hon. Jeffrey M. Welbaum *Page 1