[Cite as *Fields v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-3207.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Gerald D. Fields, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 13AP-1079 |
| v. | : | (Ct. of Cl. No. 2010-12281) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on July 22, 2014

*Swope and Swope*, and *Richard F. Swope*, for appellant.

*Michael DeWine*, Attorney General, and *Amber Wootton Hertlein*, for appellee.

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Plaintiff-appellant, Gerald D. Fields, appeals a judgment of the Court of Claims of Ohio. For the following reasons, we affirm.

{¶ 2} Fields is an inmate in the custody of defendant-appellee, the Ohio Department of Rehabilitation and Correction ("DRC"). Fields suffers from cerebral palsy, which has weakened the right side of his body and impairs his ability to walk. Fields is also a diabetic.

{¶ 3} On February 6, 2010, Fields left his dormitory at the Noble Correctional Institution to visit the infirmary. Fields needed to visit the infirmary to receive his morning insulin injection. Due to a recent snowfall, eight inches of snow covered the path

to the infirmary designated for prisoner use. Another walkway, however, was clear. Fields sought permission from two correctional officers to use the cleared walkway. Both officers denied Fields' request, even though Fields used a cane and explained his fear of falling. Having no choice, Fields attempted to traverse the snow-covered path, but he fell.

{¶ 4} According to Fields, he initially felt numb after the fall and then began experiencing persistent pain in his left hip and knee. Once back in his dormitory, Fields wrote a kite, a form of communication between prisoners and institutional staff, to the warden. In the kite, Fields explained the circumstances that precipitated his fall and stated that, "I hurt my back and my leg and knees." On February 9, 2010—three days after the fall—Fields submitted a health services request, wherein he represented that, "when I fell in snow[,] I hurt my back * * * and my arms and neck." Fields attended the February 11, 2010 nurse's sick call, but his medical records contain no details regarding the visit.

{¶ 5} On or about April 22, 2010, DRC transferred Fields to the Marion Correctional Institution ("Marion"). Fields saw a nurse at the Marion infirmary on April 26, 2010. That nurse documented that Fields complained of "hip and back pain[;] more in [his] r[ight] hip[;] upon standing[,] pain is in back and [in] r[ight] [lower] calf upon sitting."

{¶ 6} According to Fields' medical records, he first complained of pain in his left hip during a May 4, 2010 doctor's sick call. A physician assistant recorded in a progress note that Fields complained of a "fall in Feb. at Noble" and "since [the] fall, pain const[ant] [and] sharp" had been radiating down his left leg. Fields also complained of "intermittent [and] dull" pain in his left hip. The physician assistant ordered an x-ray of Fields' left hip, but the x-ray showed no abnormalities.

{¶ 7} The first complaint recorded of pain in the left knee appears in progress notes dated March 9, 2012. During a doctor visit on that date, Fields complained of "pain radiat[ing] from [his] left hip to knee." A physician examined Fields' knee and found it to be normal.

{¶ 8} Fields' medical records show that, after May 4, 2010, Fields complained periodically about pain in his left hip to Marion medical professionals. Fields complained

less often of pain in his left knee. Over the years, Fields received ibuprofen, acetaminophen, naproxen, and other medications to lessen the pain.

{¶ 9} At least two medical professionals assessed Fields as having arthritis in his left hip and/or knee. One physician, Dr. Piefer, recorded in a progress note dated November 14, 2012 that he felt that Fields' "r[ight-]sided problems ha[d] contributed to l[eft] knee and l[eft] hip symptoms." Fields had "r[ight-]sided problems" as a result of his cerebral palsy.

{¶ 10} On December 1, 2010, Fields filed a complaint against DRC alleging that DRC's negligence caused his fall. The trial court bifurcated the issues of liability and damages. After a trial on liability, a magistrate recommended judgment in Fields' favor. The trial court adopted the magistrate's decision and entered judgment for Fields.

{¶ 11} At a trial on damages, Fields testified regarding his fall and the subsequent pain he felt. Fields stated that he still experiences pain in his left hip and knee, although not at the level he felt immediately after the fall. Fields stands often because sitting causes his left hip and leg to feel numb. He sometimes has difficulty sleeping because he cannot get comfortable.

{¶ 12} Fields also introduced the testimony of Ralph Lyon, who serves as both the medical director and a staff physician at Marion. Dr. Lyon explicated Fields' medical records. During direct examination, Fields' attorney asked Dr. Lyon whether he had an opinion, based on a reasonable degree of medical certainty, as to whether Fields' chronic pain in his left hip and knee were proximately caused by the trauma he experienced when he fell. Dr. Lyon answered, "I don't have enough information to make that assumption. It's possible, but I can't say more than that." (Tr. 78-79.)

{¶ 13} On cross-examination, DRC's attorney asked Dr. Lyon if he agreed with the opinion Dr. Piefer expressed in a progress note that Fields' right-sided problems contributed to the left knee and hip pain. The following then occurred:

> A: If I understand correctly, what he's thinking, it would be that - -
>
> MR. SWOPE: I'm going to object, if he has to speculate - -
>
> THE WITNESS: Yes, I have to speculate.
>
> THE COURT: I will sustain that one.

BY MS. VOLP:

Q: Is it possible that Mr. Fields' right-sided limp due to his cerebral palsy has caused pain in his left hip?

A: It's possible.

MR. SWOPE: Object; move to strike. Everything is possible.

MS. VOLP: You had him testify to possibilities, as well.

THE COURT: I'll overrule. I mean, it is what it is. It's possible. I don't think that's calling for him to speculate.

(Tr. 100-01.)

{¶ 14} After Dr. Lyon concluded his testimony, Fields introduced the testimony of Troy Lumpkin, a fellow inmate of Fields when Fields was assigned to Noble. Lumpkin testified that Fields "really couldn't move" after his fall. (Tr. 8.) Lumpkin also stated that Fields complained that the fall caused pain along the whole right side of his body.

{¶ 15} On June 25, 2013, the magistrate issued a decision in which he recommended that the trial court award Fields $2,500 for his pain and suffering. The magistrate concluded that, while Fields' fall on the snow-covered walkway "caused him to sustain some temporary pain or soreness throughout his body for several days," Fields failed to prove "a causal relationship between the fall and the persistent pain he complains of in his left hip and knee." (R. 111, at 5.) Thus, the amount of the award only compensated Fields for the transitory pain he experienced immediately after the fall, not the chronic pain in his left hip and knee.

{¶ 16} Fields objected to the magistrate's decision, but the trial court overruled the objections and adopted the decision. On December 4, 2013, the trial court issued a judgment rendering judgment for Fields in the amount of $2,500.

{¶ 17} Fields now appeals the December 4, 2013 judgment, and he assigns the following errors:

**ASSIGNMENT OF ERROR NO. 1.) THE TRIAL COURT AND MAGISTRATE ERRED WHEN THEY RULED PLAINTIFF-APPELLANT FAILED TO PROVE HIS PERSISTENT PAIN, SUFFERED SINCE THE FALL ON FEBRUARY 6, 2010, AT THE NOBLE**

**CORRECTIONAL INSTITUTION, WAS CAUSED BY THE FALL.**

**ASSIGNMENT OF ERROR NO. 2.) THE TRIAL COURT AND MAGISTRATE ERRED WHEN THEY RELIED ON A MEDICAL REQUEST FORM DATED FEBRUARY 6, 2010 AND A KITE TO THE WARDEN, WHEN THE REQUEST STATES HE FELL TWICE WHEN NO MEDICAL RECORD OR TESTIMONY DESCRIBES THE FALL, ITS NATURE OR FACTS RELATED TO THE FALL, AS WELL AS A DESCRIPTION OF INJURIES.**

**ASSIGNMENT OF ERROR NO. 3.) THE TRIAL COURT AND MAGISTRATE ERRED AND FAILED TO CONSIDER PLAINTIFF-APPELLANT'S PRIOR MEDICAL HISTORY OF LACK OF PAIN AND THE FACT THAT PLAINTIFF-APPELLANT WAS MORE SUSCEPTIBLE TO BACK, KNEE AND HIP PAIN BECAUSE OF HIS FRAGILE CONDITION CAUSED BY CEREBRAL PALSY.**

**ASSIGNMENT OF ERROR NO. 4.) THE TRIAL COURT AND MAGISTRATE ERRONOUSLY ALLOWED THE DEFENSE TO ELICIT AN OPINION ABOUT POSSIBILITIES AND TO RELY ON THE HEARSAY OPINION OF DR. PIEFER.**

**ASSIGNMENT OF ERROR NO. 5.) THE TRIAL COURT'S AND MAGISTRATE'[S] DECISIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, NOT SUPPORTED BY SUFFICIENT EVIDENCE AND [ARE] CONTRARY TO LAW.**

{¶ 18} Because they are interrelated, we will address Fields' first, second, third, and fifth assignments of error together. Essentially, by these assignments of error, Fields argues that the trial court should have awarded him damages for the chronic pain in his left hip and knee. Fields contends that that the manifest weight of the evidence does not sustain the finding that the fall did not proximately cause his chronic pain. We disagree.

{¶ 19} Appellate courts will not reverse judgments supported by some competent, credible evidence as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one

side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " (Emphasis omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). Thus, in reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way. *Eastley* at ¶ 20. In so applying the standard, the court of appeals "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 20} Compensatory damages are intended to make the plaintiff whole for the wrong done to him or her by the defendant. *Fantozzi v. Sandusky Cement Prods. Co.*, 64 Ohio St.3d 601, 612 (1992). Compensatory damages in a personal injury case include compensation for direct pecuniary loss, such as medical expenses; loss of time or money from the injury; loss due to the permanency of the injuries; disabilities or disfigurement; and physical and mental pain and suffering. *Id.*; *Stephenson v. Upper Valley Family Care, Inc.*, 2d Dist. No. 07CA12, 2008-Ohio-2899, ¶ 79. Before a plaintiff can recover any such damage, he or she must prove that the act complained of was the direct and proximate cause of the injury for which the plaintiff seeks compensation. *Strother v. Hutchinson*, 67 Ohio St.2d 282, 286 (1981).

{¶ 21} Here, the trial court did not believe Fields' assertion that the fall directly and proximately caused the chronic pain in his left hip and knee. To support its finding, the trial court pointed out that the injuries Fields complained of immediately after the accident did not correspond with his later complaints. After the fall, Fields complained to Lumpkin about pain on his right—not left—side. When seeking medical attention for his injuries, Fields claimed that he had hurt his back, arm, and neck—not his hip or knee. Thereafter, during an April 26, 2010 nursing assessment, Fields stated that his pain was primarily in his right—not left—hip. The first documented complaint of left hip pain occurred approximately three months after the fall. Fields' medical records include no specific complaint of left knee pain until March 9, 2012—over two years after the fall.

{¶ 22} Second, the trial court found telling the absence of any expert testimony that the fall proximately caused Fields' chronic left hip and knee pain. The best Fields

could muster was Dr. Lyon's testimony that the fall possibly caused the pain. Dr. Lyon later identified a second possible cause; namely, that the pain could be due to overcompensation for the neuropathy on Fields' right side.[1]

{¶ 23} On appeal, Fields attacks the trial court's finding of a lack of proximate cause by referring to evidence that, according to Fields, demonstrates that he did not have any left hip or knee pain until after the fall. Fields also points to his own testimony that the fall caused his left hip and knee pain. Ultimately, the trial court did not find Fields' evidence as persuasive as DRC's evidence. We concur with the trial court's assessment of the evidence.

{¶ 24} After reviewing the record, we conclude that competent, credible evidence supports the trial court's conclusion that Fields failed to show the fall proximately caused his chronic left hip and knee pain. The trial court, therefore, did not err in refusing to award him damages to compensate him for that pain. Accordingly, we overrule Fields' first, second, third, and fifth assignments of error.

{¶ 25} By Fields' fourth assignment of error, he argues that the trial court erred in allowing into evidence Dr. Piefer's progress note and Dr. Lyon's testimony that Fields' right-sided limp possibly caused the pain in his left hip. We disagree.

{¶ 26} The admission of evidence is within the discretion of the trial court. *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38. Thus, a court of appeals will only reverse a decision admitting or excluding evidence upon a showing of an abuse of discretion. *Id.*; *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, ¶ 22. A trial court abuses its discretion if its decision is unreasonable, arbitrary, or unconscionable. *Johnson* at ¶ 22; *Banford* at ¶ 38.

{¶ 27} To preserve error for appellate review, a party must make a timely objection to the admission of evidence and state the specific ground of the objection if not otherwise apparent from the context of the testimony. Evid.R. 103(A)(1); *Brooks-Lee v. Lee*, 10th Dist. No. 03AP-1149, 2005-Ohio-2288, ¶ 43. Failure to object waives any error, other than plain error, on appeal. *Id.* Here, Fields did not object to the admission of the progress note containing Dr. Piefer's opinion. Therefore, we review the admission only for plain error.

---

[1] As discussed below, we reject Fields' argument that the trial court erred in admitting this testimony.

{¶ 28} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. Applying this standard, we cannot conclude that the admission of Dr. Piefer's progress note rises to the level of plain error.

{¶ 29} Unlike Dr. Piefer's progress note, Dr. Lyon's testimony was the subject of an objection. Fields argues that the trial court abused its discretion in admitting Dr. Lyon's testimony because he stated that Fields' right-sided limp was a possible—not probable—cause of the pain in his left hip. We are not persuaded.

{¶ 30} When identifying a proximate cause of an injury, an expert witness, whether testifying for the plaintiff or defendant, must express his opinion in terms of probability. *Stinson v. England*, 69 Ohio St.3d 451 (1994), paragraph one of the syllabus. This rule, however, does not apply to the case at bar. Dr. Lyon expressly declined to offer any opinion regarding the proximate cause of Fields' chronic pain. In response to the questioning of Fields' attorney on direct examination, Dr. Lyon would only state that Fields' fall was a possible cause of his chronic pain. We conclude that DRC could counter this testimony by cross-examining Dr. Lyon about other possible causes.

{¶ 31} In sum, Fields has failed to demonstrate any reversible error in the challenged evidentiary rulings. Accordingly, we overrule Fields' fourth assignment of error.

{¶ 32} For the foregoing reasons, we overrule all of Fields' assignments of error, and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

CONNOR and LUPER SCHUSTER, JJ., concur.

_____